UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JORDAN RATAJ,

    Plaintiff,

vs                                              Case No: 14-10531
                                              Honorable Victoria A. Roberts

DEPUTY DUVA,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DOC. # 23)**

**I.    NATURE OF ACTION**

This action arises from the arrest of Jordan Rataj ("Rataj") on February 12, 2012, following a dispute and altercation he had with his 80 year old disabled uncle with whom he lived.  The uncle refused to allow Rataj to use his car.  The 70 year old sister of the uncle called 911.  Michigan State Police responded to the call and decided there was probable cause to arrest Rataj in connection with the domestic dispute.  Rataj does not challenge the arrest but says Deputy Duva ("Duva") used excessive force to arrest him.

Rataj sues Duva under 42 U.S.C. § 1983 for violation of his constitutional right to be free from excessive force.  He also brings state law claims of assault, battery and gross negligence.  Other Defendants named in Rataj's complaint have been dismissed.

Duva moves for summary judgment.  For the reasons stated, Defendant's motion is **GRANTED**.

**II.    APPLICABLE LAW**

1

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 1250 (1986). On a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. Lts. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

### III. ANALYSIS

#### A. FEDERAL CONSTITUTIONAL VIOLATION: EXCESSIVE FORCE

Rataj alleges excessive force in violation of 42 U.S.C. § 1983.

To prevail Rataj "must establish that a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006) (citing *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001)). However, a defendant may assert qualified immunity, which shields government officials from suit under § 1983 for their discretionary actions. *Gradisher v. City of Akron*, No. 14-3973, 2015 WL 4503208 at *6 (6th Cir. 2015) (quoting *Cummings v. City of Akron*, 418 F.3d 676, 685 (6th Cir. 2005)).

"To overcome that defense, a plaintiff must show that, when the facts are viewed most favorable to him, (1) the defendant deprived him of a constitutionally protected

right, and (2) the right was 'clearly established' at the time of the violation." *Gradisher*, 2015 WL 450328 at *6 (quoting *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 400, (6th Cir. 2009)). "'Courts may [ ] address these prongs in either order; indeed one may be dispositive.' "*Gradisher,* 2015 WL 4503208, at *6 (quoting *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012)). "'If either one is not satisfied, qualified immunity will shield the officer from civil damages.'" *Gradisher,* 2015 WL 4503208, at *6, (quoting *Martin v. City of Broadview Heights,* 712 F.3d 951, 957 (6th Cir. 2013)).

Duva says that even if Rataj asserted sufficient facts to substantiate his excessive force claim, the amount of force used may fall in the "sometimes 'hazy border between acceptable and excessive force,' which qualified immunity is designed to protect." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (citing *Priester v. Riviera Beach*, 208 F.3d 919, 926-27 (11th Cir. 2000)).

"The essence of qualified immunity [ ] is to give government officials cover when they resolve close calls in reasonable (even if ultimately incorrect) ways." *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 511 (6th Cir. 2012). "[S]ince the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury," *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989), "summary judgment is inappropriate where there are contentious factual disputes," *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998).

Here, the Court examines the first prong and finds that Rataj fails to establish a constitutional violation.

Rataj characterizes his excessive force claims against Duva in two distinct ways.

3

In his Complaint, he alleges that: "without any provocation or justifiable reason whatsoever, Defendant Duva grabbed Plaintiff's head, and while handcuffed and subdued, smashed Plaintiff's head through a drywall covered wall." (Complaint, ¶ 15) Rataj says the force was so great, that the drywall broke, and Defendant Duva then violently grabbed and "threw him down on the bed." *Id.* at ¶ 16-17

The Complaint alleges that Plaintiff was thrown against the wall <u>after</u> Duva handcuffed him.

Plaintiff testified at his deposition differently.  At deposition, he said Duva opened the door to his room, grabbed him, slammed him against the drywall and then cuffed him. (Rataj Dep., pp 116 - 117)

The distinction is critical; the allegations of the Complaint suggest excessive force <u>after</u> Duva had Rataj under control, which undoubtedly would be an actionable constitutional violation.  *Gross v. City of Deaborn Heights*, 2014 U.S. Dist. LEXIS 11304, at *11-12 (E.D. Mich. Jan. 30, 2014).

On the other hand, pre-handcuffing force as Plaintiff testified to at deposition, must be evaluated in the context of an officer's "right to use some degree of physical coercion" to effect arrest. *Gross,* 2014 U.S Dist. LEXIS 11304, at *4.

For purposes of this summary judgment motion, the Court relies on Plaintiff's deposition testimony.  *Leary v. Livingston County*, 528 F.3d 438, 444 (6th Cir. 2008) ("a claimant may not create a triable issue of fact by saying one thing in a complaint and something else in a deposition.") *Leary* stands for the proposition that when a claimant's testimony contradicts the allegations in his complaint, the court should credit his later testimony.

4

There is no doubt Duva was lawfully in the home in which Rataj resided and that there was probable cause to arrest Rataj without a warrant. There also is no dispute that Duva was in the basement knocking on Rataj's door, and that Rataj did not respond to Duva's lawful command to open the door. When he did open the door, Rataj's testimony is that he was grabbed by Duva, slammed against the wall (Rataj's says his head went through the drywall), handcuffed and ultimately thrown on his bed. (Rataj Dep., 94-97).

Rataj testified he was not hurt by being thrown on the bed. (Rataj Dep., 100) And, while Rataj initially testified "my head went through the drywall" (Rataj Dep., 96), he later testified "my head never went in. It broke the drywall. It just never went in." (Rataj Dep., 128)

Was the push into the wall excessive force? The Court believes not; the Court agrees with Duva that this is the type of minor push or shove which does not rise to the level of a constitutional violation.

*See also Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000) ("a minimal amount of force and injury will not defeat an officer's qualified immunity in an excessive force case.")

The Sixth Circuit holds that the "right to be free from excessive force is a clearly established Fourth Amendment right." *Neague v. Cynkar,* 258 F.3d 504, 507 (6th Cir. 2001). In evaluating whether "a constitutionally protected right" has been violated, courts employ an "objective reasonableness" test, which requires consideration of the totality of the circumstances. *See Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989) ("[T]he question is whether the officers' actions were

5

'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."); *Summerland v. County of Livingston*, 240 F. App'x 70, 76 (6th Cir. 2007) ("The ultimate question is 'whether the totality of the circumstances justified a particular sort of search and seizure.'" (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985))). "The test is fact specific, not mechanical, and the three most important factors for each case are: (1) the severity of the crime at issue; (2) the threat of immediate danger to the officers or bystanders; and (3) the suspect's attempts to resist arrest or flee." *Wysong v. City of Heath*, 260 F. App'x 800, 854 (6th Cir. 2008).

Furthermore, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396, 109 S. Ct. at 1865. This inquiry must be conducted with sufficient respect for the fact that police officers often confront exceedingly perilous situations where detached rumination risks loss of life. *See id.* at 396-97, 109 S. Ct. at 1865 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.").

The Supreme Court has held the "[T] right to make an arrest or investigational stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.*

*See also Nolin v. Isbell*, 207 F.3d 1253, 1255, 1258 & n.4 (11th Cir. 2000) (during the course of arrest, officer grabbed plaintiff and shoved him against a van, kneed him in the back and pushed his head against the van, searched his groin area, and then handcuffed him.  As a matter of law, this was not excessive force); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) ("even though pushing Lirio against the wall might have been unnecessary, this pushing was not plainly unlawful" and summary judgment was appropriate).

The first factor the Court must consider in evaluating the objective reasonableness of Duva's actions is the severity of the crime he allegedly committed. Duva and other officers were there to arrest Rataj for having terrorized his 80 year old uncle through threats, tearing the phone lines out and shutting off the furnace so his uncle would have no heat.  These are serious allegations.

The second factor in evaluating the totality of the circumstances and the objective reasonableness of the officer's actions is the threat of danger to the officers and bystanders. Defense witnesses testified of concern for their safety, and not knowing if Rataj had a weapon.  Rataj also failed to respond to requests to come out of his room with his hands up.  He testified he had music on and did not hear the commands, but he does not rebut that he did not come out immediately.  Under these circumstances Duva had a legitimate concern for his safety and that of others, underscoring a need to get Rataj under control as soon as possible.

The third factor is whether there were indications that Rataj would resist or flee. While it appears things moved very rapidly, Rataj did fail to respond to the lawful command of officers.

Nothing in this record points to an excessive use of force while officers attempted to cuff Rataj. There was no hole in the wall; there was no need for repair; Rataj had no visible sign of injury; he complained to no one; he did not seek medical treatment; he did not mention any injury until after lawyers sent him to a chiropractor 45 days later; and, an MRI showed no injury. He testified he suffered no injury from being thrown on the bed. Nevertheless, he complained of bad headaches, blurred vision and back and neck pain.

The Court finds that the minimal use of force to effect Rataj's arrest does not rise to the level of a constitutional violation. Even if it did, Duva would be entitled to qualified immunity. The shield given to officers by qualified immunity "sweeps broadly, affording them ample room for mistaken judgments' by protecting all but the plainly incompetent or those who knowingly violate the law." *Scott v. Clay Cnty*, 205 F.3d 867, 874 (6th Cir. 2000) (quoting *Sova,* 142 F.3d at 902) (internal quotations removed).

The Court grants Duva summary judgment on Rataj's claim of excessive force during the course of his handcuffing, and dismisses Count I of Rataj's Complaint.

### B. STATE CLAIMS

#### 1. ASSAULT AND BATTERY

Count III alleges assault and battery, both intentional torts, arising from the same facts discussed above.

Assault is defined as an "intentional unlawful offer or corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled

8

with the apparent ability to accomplish." (*VanVorous v. Burmiester*, 262 Mich. App. 467, 482 (2004) (quoting *Espinoza v. Thomas*, 189 Mich. App. 110, 119 (1991).

Battery is defined as "a willful and harmful or offensive touching of another person which results from the act intended to cause such a contact." *Id.* at 483.

Since Rataj pleads intentional torts, this Court is required to determine if Duva is entitled to governmental immunity. *Odom v. Wayne County*, 482 Mich. 459, 462, 760 N.W.2d 217 (2008).

In *Ross v. Consumers Powers*, 420 Mich. 567, 363 N.W. 2d 641 (1984), the Michigan Supreme Court explained that governmental employees are entitled to qualified immunity in the context of intentional torts provided the:

(1)  employee acted reasonably in the scope of his employment;

(2)  acts were taken in good faith and without malice;

(3)  acts were discretionary and not ministerial. *Id.* at 633.

For the same reasons the Court finds Duva would be entitled to qualified immunity on Rataj's excessive force claim, Duva enjoys the protection of state governmental immunity.

Rataj's assault and battery claim, Count III, is dismissed.

### 2. GROSS NEGLIGENCE

Count IV of Rataj's Complaint alleges gross negligence, relying on the same allegations he uses to support his excessive force claim and state claims for intentional torts. Even Rataj acknowledges in his brief that Michigan rejects attempts to transform claims involving elements of intentional torts into claims of gross negligence. *VanVorous v. Burmeister*, 262 Mich. App. 467, 483, 687 N.W. 2d 132 (2004).

*See also Miller v. Sanilac County*, 606 F.3d 240, 254 (6th Cir. 2010) (dismissing gross negligence because actions sounded in intentional tort arising from "conduct while effecting the arrest.")

Count IV is dismissed.

## IV. CONCLUSION

Defendant's motion is **GRANTED**. Rataj's Complaint against Duva is dismissed in its entirety. Judgment will enter in favor of Duva.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: September 2, 2015

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 2, 2015.

s/Linda Vertriest
Deputy Clerk

10